# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Civil Action No.

JAMES PAUL KALHORN,

       Plaintiff,

v.

ANDY PHAM,

       Defendant

---

## VERIFIED COMPLAINT AND JURY DEMAND

---

Plaintiff James Paul Kalhorn, through his undersigned counsel, submits this Verified Complaint and claims for relief against Defendant Andy Pham, and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff James Paul Kalhorn, DDS ("Dr. Kalhorn"), is a citizen and resident of the State of Colorado, with a business address of 711 North Tejon Street, Suite 200, Colorado Springs, Colorado 80903.

2. Upon information and belief, Defendant Andy Pham is a citizen and resident of the State of Nevada with an address of 6040 South Durango Drive, #105, Las Vegas, Nevada 89113.

3. This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Personal jurisdiction over the Defendant is proper because Defendant committed several of the tortious actions underlying this suit in Colorado.

5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in Colorado.

## I.
## **GENERAL ALLEGATIONS**

6. Dr. Kalhorn is a dentist in Colorado Springs.

7. Defendant is a real estate developer in Las Vegas, Nevada.

8. In December 2015, Dr. Kalhorn was approached by an acquaintance who introduced him to Anthony Zogheib and Csaba Meiszburger (the "Middlemen").

9. The Middlemen proposed the following investment to Dr. Kalhorn:

   a. The Middlemen were silent owners of Caballos de Oro Estates LLC ("Caballos"). Defendant was their front-man and was the manager of Caballos.

   b. Caballos owned a five-acre piece of undeveloped property in Clark County, Nevada (the "Property").

   c. The Middlemen told Dr. Kalhorn they had various debts that needed to be paid. They needed a creditworthy investor to pay off their debts, and they would pay him back, plus a ten percent fee, within sixty days. If they could not pay after sixty days, Dr. Kalhorn would own the land.

10. Dr. Kalhorn agreed to the arrangement, and the Middlemen used the Nevada Secretary of State website to remove Defendant as the manager of Caballos and replaced his name with Dr. Kalhorn's. Dr. Kalhorn believes Defendant received notice of the change from the Nevada Secretary of State.

11. The Middlemen convinced Dr. Kalhorn that he had become the sole manager and member of Caballos. Dr. Kalhorn also obtained an opinion letter from a local attorney, Rory Vohwinkle, stating that Dr. Kalhorn was the rightful managing member of Caballos.

12. Dr. Kalhorn then obtained two loans for $1.2 million and $550,000, using the Property as security. Dr. Kalhorn personally guaranteed each loan.

13. The Middlemen never repaid Dr. Kalhorn, and so he began taking steps to develop the property himself.

14. In mid-2016, Dr. Kalhorn conveyed the Property to Prometheus and Atlas Real Estate Development, LLC, a new company he had formed to hold the Property.

15. At the end of 2016, Defendant first sent a letter to Dr. Kalhorn claiming to be the rightful owner of the Property and the rightful manager of Caballos.

16. A separate action is pending in Nevada to clear title to the Property.

17. Upon information and belief, Defendant was involved in the Middlemen's scheme to defraud Dr. Kalhorn. In short, the Middlemen convinced Dr. Kalhorn to pay off various debts and personally guarantee separate loans. Then they claimed Dr. Kalhorn has no interest in Caballos or the Property, leaving him solely responsible for the loans.

18. Defendant is now engaged in a campaign to defame Dr. Kalhorn.

19. Defendant was the source for an inaccurate story reported in the Las Vegas Review-Journal, published Sunday, May 20, 2018, which characterizes Dr. Kalhorn as a "fraudster" and portrays Defendant as the victim of fraud committed by Dr. Kalhorn.

20. On May 28, 2018, in the building where Dr. Kalhorn's dental office is located, Defendant handed out copies of the Review-Journal article along with copies of a flyer calling Dr. Kalhorn a "Corporate Land Thief":



21. Defendant's flyer also directed recipients to a website titled StopJamesKalhorn.com. As of June 29, 2018, the front page of the website was topped with a photo of Dr. Kalhorn captioned "JAMES KALHORN'S MUGSHOT" and text reading, "WANTED: STEALING BY DECEIT AND CROSSING STATE LINE TO COMMIT GRAND LARCENY":

3



22. As of July 2, 2018, the website had been edited in minor respects. The banner now reads: "Dentist in Colorado Springs wanted: STEALING BY DECEIT AND GRAND LARCENY":



23. The updated webpage is supplemented with a photo of Defendant holding the flyer in front of Dr. Kalhorn's dental practice:



4

24. A previous version of the website was headlined: "Accomplices of James Kalhorn" followed by a photo of an FBI "Wanted" poster:

 

25. Below the banner, the content is titled "HOW TO EASILY STEAL $5 MILLION DOLLARS WITHOUT A GUN."

26. The website, among other things,

    a. Accuses "the entire City Council of Las Vegas, including the Mayor" of "unwittingly . . . assist[ing]" "a total swindler."

    b. Accuses Dr. Kalhorn of being a "land thief" and "corporate identity thief" and of committing "corporate identity fraud."

    c. Asserts as a fact that Dr. Kalhorn engineered a sophisticated scheme to steal Defendant's property:

> Dr. Kalhorn figured out that instead of going into a bank with a machine gun and robbing ten thousand dollars and maybe getting himself killed by police in the process, that he could, safely from his own home, steal millions of dollars without moving much more than his index finger, and no one would be the wiser. He's been working on his crime since New Year's Eve (December 31st, 2015), and has stolen millions over that approximately 16-month timeframe, unknown to anyone, even the Commissioners (including the Mayor) of the City of Las Vegas. . . .

5

> James Kalhorn used his computer to visit the Nevada Secretary of State's website, and changed the name of the Manager of Caballos, from Andy Pham, into James' Kalhorn's own
>
> * * *
>
> Once James Kalhorn had the "keys" on the Nevada Secretary of State web site to "officially" control the Management of Caballos, he knew just what to do.
>
> . . . He immediately zeroed in on one of Caballos's properties, a $5 million dollar 5-acre piece of land . . . which Caballos owned free and clear of debt.
>
> Mr. Kalhorn contacted a lender, and since the property had zero debt, he borrowed approximately $1.75 million dollars on the property . . .
>
> * * *
>
> . . . [Mr. Kalhorn] hired a real estate brokerage firm in late December 2016 to sell the property for $2.6 million dollars, so he could add millions more from this new sale, to the millions he already made with his fraudulent borrowing scheme.

27. Yvonne Serna, a woman who works across the street from Dr. Kalhorn's office, encountered Defendant handing out these flyers stapled to copies of the orchestrated newspaper article. Defendant told Ms. Serna that

   a. Dr. Kalhorn stole the property across the street from Defendant by forging documents and filing them with the Nevada Secretary of State; and

   b. Dr. Kalhorn was a thief and a liar.

28. David Zallar received a copy of the flyer and reviewed the website content. As a result, Mr. Zallar has decided not to invest $250,000 in Alma Tequila Company ("Alma Tequila"), a company in which Dr. Kalhorn is an equity shareholder.

29. Matthais Bober was made aware of Defendant's website and viewed the content. As a result, Mr. Bober has decided not to invest $350,000-400,000 in Alma Tequila.

30. All of Defendant's statements about Dr. Kalhorn are false:

6

       a. Dr. Kalhorn is not wanted by law enforcement for theft, grand larceny, or any other crime.

       b. Dr. Kalhorn did not concoct a scheme to steal Defendant's property using the Nevada Secretary of State's website in lieu of robbing a bank.

       c. Dr. Kalhorn did not file forged documents with the Nevada Secretary of State.

       d. Dr. Kalhorn is not an identity theft and has not committed identity theft.

       e. Dr. Kalhorn is not a "corporate land thief" and did not steal Defendant's land.

       f. Dr. Kalhorn is not a "fraudster" and did not defraud Defendant.

## II.
## FIRST CLAIM FOR RELIEF
### Defamation – Libel Per Se – Flyer

31. All of the previous allegations are incorporated as if fully set forth here.

32. Defendant created a printed flyer calling Dr. Kalhorn a "Corporate Land Thief."

33. Theft is a crime punishable under Colorado statute, and Defendant's statement is therefore libel per se.

34. The flyer was published to at least two individuals other than Dr. Kalhorn.

35. Dr. Kalhorn's reputation and business interests have been damaged by Defendant's flyer.

## III.
## SECOND CAUSE OF ACTION
### Defamation – Libel Per Se – Website

36. All of the previous allegations are incorporated as if fully set forth here.

37. Defendant created a website called "StopJamesKalhorn.com," which says that Dr. Kalhorn is "WANTED" for "STEALING BY DECEIT AND CROSSING STATE LINE TO COMMIT GRAND LARCENY." The website asserts as a fact that Dr. Kalhorn engineered a complex scheme to steal Defendant's Property. The website accuses Dr. Kalhorn of fraud and theft, among other things.

7

38. Theft is a crime punishable by Colorado law and Defendant's statements are therefore libel per se.

39. The website content has been published to the public at large and has been viewed by at least two individuals other than Dr. Kalhorn.

40. Dr. Kalhorn's reputation and business interests have been damaged by Defendant's website.

### IV.
### THIRD CAUSE OF ACTION
**Defamation – Slander Per Se – Statements to Business Neighbor**

41. All of the previous allegations are incorporated as if fully set forth here.

42. Defendant made oral statements to a woman who works near Dr. Kalhorn's dental office that Dr. Kalhorn was a thief and a liar and accused Dr. Kalhorn of committing theft by filing forged documents.

43. Theft and forgery are crimes punishable by Colorado law and therefore Defendant's oral statements are slander per se.

44. Defendant's oral statements were published to a person other than Dr. Kalhorn.

45. Dr. Kalhorn's reputation and business interests have been damaged by Defendant's slanderous statements.

### V.
### FOURTH CAUSE OF ACTION
**Tortious Interference with Prospective Business Advantage – Dental Patients**

46. All of the previous allegations are incorporated as if fully set forth here.

47. Dr. Kalhorn had prospective business relationships with dental patients.

48. Defendant knew or should have known that Dr. Kalhorn had prospective business relationships with various dental patients.

49. By orchestrating the inaccurate Review-Journal article, publishing a defamatory website, and publishing defamatory flyers, Defendant caused dental patients not to form contractual relationships with Dr. Kalhorn.

50. Defendant's interference was improper.

51. Dr. Kalhorn has suffered damages as a result of Defendant's improper interference.

## VI.
## FIFTH CAUSE OF ACTION
**Tortious Interference with Prospective Business Advantage – Investors**

52. All of the previous allegations are incorporated as if fully set forth here.

53. Dr. Kalhorn had prospective business relationships with investors in his company, Alma Tequila.

54. Upon information and belief, Defendant knew about these prospective business relationships with investors.

55. By orchestrating the inaccurate Review-Journal article, publishing a defamatory website, publishing defamatory flyers, and, upon information and belief, sending potential investors copies of the flyer and links to the website, Defendant caused the potential investors not to form contractual relationships with Dr. Kalhorn.

56. Defendant's interference was improper.

57. Dr. Kalhorn has suffered damages as a result of Defendant's improper interference.

## PRAYER FOR RELIEF

Dr. Kalhorn prays the Court will enter judgment in his favor and award him damages in an amount to be proven at trial, prejudgment and post-judgment interest, his costs and attorney's fees, and any other relief the Court deems equitable and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Case 1:18-cv-01685-KMT   Document 2   Filed 07/05/18   USDC Colorado   Page 10 of 11

## Verification

STATE OF COLORADO           )
                            )
CITY AND COUNTY OF DENVER   )

I, James Kalhorn, verify that the foregoing is true and correct to the best of my knowledge and belief.

_____
James Kalhorn

[Notary Seal: Yvonne Luanne Martinez, Notary Public, State of Colorado, Notary ID 20024011430, My Commission Expires April 05, 2022]

Acknowledged, subscribed, and sworn to before me this 3rd day of July 2018.

04/05/2022                              _____
My commission expires                   Notary Public

10

Respectfully submitted this 3rd day of July 2018.

                                ROBINSON WATERS & O'DORISIO, P.C.

                                */s/Anthony L. Leffert*
                                Anthony L. Leffert, #12375
                                Elizabeth Michaels, #50200
                                1099 18th Street, Suite 2600
                                Denver, CO 80202
                                (303) 297-2600
                                (303) 297-2750 (f)
                                aleffert@rwolaw.com
                                emichaels@rwolaw.com

                                *Attorneys for Plaintiff James Kalhorn*

Plaintiff's Address:
711 North Tejon Street, Suite 200
Colorado Springs, CO 80903