IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01685–KMT

JAMES PAUL KALHORN,

    Plaintiff/Counterclaim Defendant,

v.

ANDY PHAM,

    Defendant/Counterclaim Plaintiff.

---

**ORDER**

---

This matter is before the court on "Plaintiff's Motion to Dismiss Defendant's Counterclaims" (Doc. No. 25 [Mot], filed September 14, 2018). Defendant filed his response on October 4, 2018 (Doc. No. 32 [Resp.]), and Plaintiff filed his reply on October 16, 2018 (Doc. No. 33 [Reply]).

**STATEMENT OF THE CASE**

Plaintiff (hereinafter referred to as "Kalhorn") filed his First Amended Complaint on July 19, 2018, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 16 [Am. Compl.].) Kalhorn states he is a dentist in Colorado Springs, and Defendant (hereinafter referred to as "Pham") is a real estate developer and citizen of Idaho. (*Id.*, ¶¶ 2, 6–7.)

   A. *Background Information*

Kalhorn states that in December 2015, he was approached by an acquaintance who introduced him to Anthony Zogheib and Csaba Meiszburger (the "Middlemen"). (*Id.*, ¶ 8.) The

Middlemen were silent owners of Caballos de Oro Estates LLC ("Caballos"), which owned a five-acre piece of undeveloped property in Clark County, Nevada (the "Property"). (*Id.*, ¶ 9.a–b.) Kalhorn alleges Pham was the Middlemen's front-man and was the manager of Caballos. (*Id.*, ¶ 9.a.) Kalhorn alleges the Middlemen told him they had various debts that needed to be paid, that they needed a creditworthy investor to pay off their debts, and they would pay him back, plus a ten percent fee, within sixty days. (*Id.*, ¶ 9.c.) Kalhorn alleges the Middlemen agreed that if they could not pay after sixty days, Kalhorn would own the land. (*Id.*) Kalhorn agreed to the arrangement, and the Middlemen used the Nevada Secretary of State website to remove Pham as the manager of Caballos and replace his name with Kalhorn's name. (*Id.*, ¶ 10.)

Kalhorn alleges the Middlemen convinced him that he had become the sole manager and member of Caballos. (*Id.*, ¶ 11.) Kalhorn also obtained an opinion letter from a local attorney, Rory Vohwinkle, stating that he was the rightful managing member of Caballos. (*Id.*) Kalhorn then obtained two loans for $1.2 million and $550,000, using the Property as security. (*Id.*, ¶ 12.) Kalhorn personally guaranteed each loan. (*Id.*)

Kalhorn alleges the Middlemen never repaid Kalhorn, and so he began taking steps to develop the Property himself. (*Id.*, ¶ 13.) In mid-2016, Kalhorn conveyed the Property to Prometheus and Atlas Real Estate Development, LLC, a new company he had formed to hold the Property. (*Id.*, ¶ 14.) At the end of 2016, Pham sent a letter to Kalhorn claiming to be the rightful owner of the Property and the rightful manager of Caballos. (*Id.*, ¶ 15.) In March 2017, Caballos filed an action in Nevada state court to clear title to the Property. (*See* Reply, Ex. 1.) Kalhorn alleges Pham was involved in the Middlemen's scheme to defraud him by convincing Kalhorn to pay off various debts and personally guarantee separate loans and then claiming

Kalhorn has no interest in Caballos or the Property, leaving him solely responsible for the loans. (Am. Compl., ¶ 17.)

### B. *Kalhorn's Claims in this Case*

Kalhorn alleges Pham is now engaged in a campaign to defame him. (*Id.*, ¶ 18.) Specifically, Kalhorn alleges Pham was the source for an inaccurate story reported in the Las Vegas Review-Journal, published Sunday, May 20, 2018, which characterizes Kalhorn as a "fraudster" and portrays Pham as the victim of fraud committed by Kalhorn. (*Id.*, ¶ 19.) Kalhorn also alleges on May 28, 2018, in the building where Kalhorn's dental office is located, Pham handed out copies of the Review-Journal article along with copies of a flyer calling Kalhorn a "Corporate Land Thief" and directing recipients to a website titled StopJamesKalhorn.com. (*Id.*, 20–21.) As of June 29, 2018, the front page of the website was topped with a photo of Kalhorn captioned "JAMES KALHORN'S MUGSHOT" and text reading, "WANTED: STEALING BY DECEIT AND CROSSING STATE LINE TO COMMIT GRAND LARCENY." (*Id.*, ¶ 21.) As of July 2, 2018, the website had been edited to read, "Dentist in Colorado Springs wanted: STEALING BY DECEIT AND GRAND LARCENY." (*Id.*, ¶ 22.) The updated webpage is supplemented with a photo of Pham holding the flyer in front of Kalhorn's dental practice. (*Id.*, ¶ 23.) A previous version of the website was headlined: "Accomplices of James Kalhorn" followed by a photo of an FBI "Wanted" poster. (*Id.*, ¶ 24.) Kalhorn alleges the website, among other things, (1) accuses "the entire City Council of Las Vegas, including the Mayor" of "unwittingly . . . assist[ing]" "a total swindler;" (2) accuses Kalhorn of being a "land thief" and "corporate identity thief" and of committing "corporate

3

identity fraud;" and (3) asserts that Kalhorn engineered a sophisticated scheme to steal Pham's property.  (*Id.*, ¶ 26.)

Kalhorn alleges that Yvonne Serna, a woman who works across the street from Kalhorn's office, encountered Pham handing out these flyers stapled to copies of the newspaper article and told Ms. Serna that Kalhorn stole the property across the street from Pham by forging documents and filing them with the Nevada Secretary of State and that Kalhorn was a thief and a liar.  (*Id.*, ¶ 27.)  Kalhorn also alleges David Zallar received a copy of the flyer and reviewed the website content and, as a result, Mr. Zallar has decided not to invest $250,000 in Alma Tequila Company ("Alma Tequila"), a company in which Kalhorn is an equity shareholder.  (*Id.*, ¶ 28.)  Kalhorn also alleges Matthais Bober was made aware of Pham's website and viewed the content and, as a result, Mr. Bober has decided not to invest $350,000–400,000 in Alma Tequila.  (*Id.*, ¶ 29.)

Kalhorn asserts common law claims for Defamation—Libel Per Se related to the flyer and the website, Defamation—Slander Per Se related to the statements to Kalhorn's business neighbor, and Tortious Interference with Prospective Business Advantage related to his dental patients and potential investors.  (*Id.*, ¶¶ 31–57.)

C. *Counterclaims in this Case*

Pham filed his Counterclaims on August 30, 2018.  (Doc. No. 20 at 12–17.)  Pham asserts that Kalhorn "fraudulently and without authorization from Mr. Pham or Caballos, signed into the Nevada Secretary of State website and [twice] amended the list of Caballos managing members," removing Pham and adding himself as sole managing member of Caballos.  (*Id.*, ¶¶ 13, 14.)  Pham alleges Kalhorn secured two promissory notes and used the Property as security on the loans.  (*Id.*, ¶ 15–16.)  Pham alleges Kalhorn made no payments on either loan and, on July 27,

4

2016, "sold" the Property to Prometheus & Atlas Real Estate Development LLC ("Prometheus"), a company owned solely by Kalhorn, without any payment to Caballos. (*Id.*, ¶¶ 17–20.)

Pham alleges Kalhorn, acting on behalf of Prometheus, then submitted plans to the City of Las Vegas to modify the zoning of the Property from low-density residential to medium-density residential. (*Id.*, ¶ 21.) The City of Las Vegas approved the zoning modification (*id.*, ¶ 22), and then Kalhorn listed the property for sale (*id.*, ¶ 23). However, one of the secured creditors recorded a Breach and Election to sell the property due to Kalhorn's alleged failure to make any payments on his loan. (*Id.*, ¶ 24.) When Pham filed suit to recover the subject property, Kalhorn filed for bankruptcy. (*Id.*, ¶ 26.)

Pham asserts claims for Abuse of Process, Conversion, and Civil Conspiracy. (*Id.*, ¶¶ 27–47.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

"[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quotations omitted).

## ANALYSIS

Kalhorn moves to dismiss the counterclaims against him on the bases of the *Colorado River*[1] abstention doctrine, failure to state a claim upon which relief can be granted, and failure to plead the abuse of process and civil conspiracy claims with particularity. (*See* Mot.)

### A. Colorado River *Abstention Doctrine*

The *Colorado River* abstention doctrine governs whether a district court should stay or dismiss a federal suit pending the resolution of a parallel state court proceeding. *Colo. River*, 424 U.S. at 817–18. The first step under the *Colorado River* analysis is determining "whether the state and federal proceedings are parallel." *Allen v. Board of Educ., Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995). If the cases are parallel, the federal court must consider a multitude of other factors in deciding whether to surrender jurisdiction until the conclusion of state court proceedings. *Id.*

The appropriate circumstances for deferral to state proceedings under the *Colorado River* abstention doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional." 424 U.S. at 817–18. Accordingly, the court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction . . . ; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of

---

[1] Pursuant to *Colorado River Conservation District v. United States*, 424 U.S. 800, 817 (1976).

justifications, that can suffice under *Colorado River* to justify the surrender of the jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983).

The Supreme Court has identified several non-exclusive factors to consider in evaluating whether to decline jurisdiction, including: (1) whether the state or federal court has assumed jurisdiction over property in dispute; (2) the inconvenience to the parties of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious nature of the litigation; (6) whether federal law provides the rule of decision; and (7) the adequacy of the state court proceeding to protect the federal plaintiff's rights. *Colo. River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 18–28. These factors are not a "mechanical checklist"; rather, the court should "careful[ly] balanc[e] . . . the most important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Fox v. Maulding*, 16 3d 1079, 1082 (10th Cir. 1994).

### 1. *Parallel Proceedings*

Suits are parallel, for purposes of *Colorado River* abstention, if substantially the same parties litigate substantially the same issues in different forums. *Fox*, 16 F.3d at 1081–1082. Put differently, suits are parallel if the state court litigation will be an "adequate vehicle for the complete and prompt resolution of the issue between the parties," such that "the federal court will have nothing further to do in resolving any substantive part of the case." *Id.* at 1081–1082.

In the Nevada state court action, Caballos asserts claims against Kalhorn and Prometheus, among others. (*See* Doc. No. 25–1.) In the Nevada state court action, the complaint states that Caballos is managed by only one manager, Andy Pham. (*Id.* at 3, ¶ 9.) Caballos asserts claims for quiet title of the Property, slander of title, alter ego, unjust enrichment, and conversion

against Kalhorn and Prometheus.  (*Id.* at 5–7).  It is clear that, as to the conversion claim Pham asserts in this case, the parties are the same, litigating substantially the same issues.  The fact that Pham is not a party to the Nevada state court action but is the defendant in the federal action is "inconsequential."  *THI of New Mexico at Vida Encantada, LLC v. Archuleta*, No. CIV. 11–0399 BB/ACT, 2012 WL 8169886, at *4 (D.N.M. Jan. 12, 2012) ("Asymmetry of parties is inconsequential especially where the parties are united by identical legal interests."); *see D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1230 (10th Cir. 2004).  Moreover, Pham's civil conspiracy claim is based on Kalhorn's allegedly conspiring with the Middlemen to replace Pham on the Nevada Secretary of State website with Kahorn as the managing member of Caballos, thus allowing Kalhorn to secure loans using the Property as collateral.  (*See* Doc. No. 20, ¶¶ 42–44.)  The Nevada state court would have been an "adequate vehicle for the complete and prompt resolution of th[is] issue between the parties."  *Fox*, 16 F.3d at 1081–1082.  Thus, the court finds Pham's conversion and civil conspiracy claims are parallel to the claims made in the Nevada state court case.

However, Pham asserts in his abuse of process claim that Kalhorn filed his case in this Court only to coerce a settlement in the Nevada state court action.  (*See* Doc. No. 20 at 15.)  This claim is distinct and unrelated to the merits of the claims at issue in the Nevada state court action and, thus, is not parallel.  As a finding of parallel proceedings is a threshold condition for engaging in the *Colorado River* analysis, *see Fox*, 16 F.3d at 1081, the court need not address the other *Colorado River* factors in relation to the abuse of process claim.  *See Allen*, 68 F.3d at 403 (directing the district court to retain jurisdiction if it determines the cases are not parallel, and

9

only to go on to the determination of whether to abstain under the *Colorado River* doctrine if it deems the cases are parallel).

### 2. *Other Factors*

Next, the court determines whether the relevant *Colorado River* factors support declining jurisdiction over Pham's conversion and civil conspiracy claims in this matter. First, Kalhorn argues that, although the conversion claim is not directly a claim to the Nevada property, it is closely related to the quiet title action in Nevada, and that the Nevada court assumed jurisdiction a year and a half ago to adjudicate that question. (Mot. at 5.) Pham concedes that the conversion claim in this matter "[can] be viewed as the same" as the claim in the Nevada state court action. (Resp. at 2.) This factor weighs in favor of abstention as to the conversion claim. However, this factor is inapplicable to the civil conspiracy claim, as there is no real property involved in that dispute.

Second, Kalhorn argues that this Court may be an inconvenient forum for the counterclaims because he "is the only counterclaim defendant here, even though Pham alleges at least three people were involved in the conspiracy." (Mot. at 7.) However, neither Pham nor Kalhorn provides any information about the location of any of the alleged co-conspirators or why Nevada would be any more convenient for them. This factor does not favor either party.

Third, the Tenth Circuit has held that "[t]he paramount consideration in *Colorado River* [is] the third factor: the danger of piecemeal litigation." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1234 (10th Cir. 2013). The court finds that the potential for piecemeal and inconsistent rulings weighs heavily in favor of declining jurisdiction over the civil conversion claim and the civil conspiracy claim, which involves the underlying conduct at issue

in the alleged conversion of the Nevada property. Fourth, the Nevada state court was the first to obtain jurisdiction. (*Compare* Doc. No. 25–1 [Nevada Complaint, filed March 23, 2017] *with* Doc. No. 2 [Counterclaim filed August 30, 2018].)

Fifth, Kalhorn argues that "the conversion claim was filed for reactive and vexatious purposes, cautioning against adjudication here." (Mot. at 5.) Indeed, the court finds that Pham's filing of what he concedes is a duplicative conversion claim as well as a civil conspiracy claim that involves the underlying conduct at issue in the alleged conversion of the Nevada property strongly suggests that the counterclaims are "vexatious or reactive." *See Moses H. Cone*, 460 U.S. at 937 n.20; *see also D.A. Osguthorpe*, 705 F.3d at 1235 (dismissal proper where plaintiff sought federal relief "only after receiving an unfavorable state-court ruling . . . [and] several years after litigation had begun in Utah[]"). This factor weighs in favor of declining jurisdiction over the claims.

Sixth, a federal court sitting in diversity applies the substantive law of forum state, *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000), and, as such, federal law does not provide the rule of decision in this case. Finally, the Nevada state court proceedings will adequately protect Pham's rights.

On balance, the court finds the above factors weigh in favor of not exercising jurisdiction over the conversion and civil conspiracy counterclaims. *Fox*, 16 F.3d at 1082.

### 3. *Stay Versus Dismissal*

Having determined that abstention under *Colorado River* is appropriate, the court must choose whether to stay the claims pending the resolution of the state proceedings, or alternatively whether to dismiss. When it is possible that "the state court proceedings [may] not resolve all

11

the federal claims, a stay preserves an available federal forum in which to litigate the remaining claims, without the plaintiff having to file a new federal action." *Fox*, 16 F.3d at 1082. In analyzing whether a stay of a defendant's counterclaim will further the interest of avoiding piecemeal litigation, the court looks at whether there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1986). Here, there is almost no chance that the state action will resolve Kalhorn's claims. Moreover, there is little chance that the state action will resolve Pham's abuse of process claim. In these circumstances, a stay does not promote, and likely will be contrary to, the goal of avoiding piecemeal litigation. *Shadwick v. Butler Nat. Corp.*, 950 F. Supp. 302, 305 (D. Kan. 1996).

The Supreme Court made clear in *Moses H. Cone* that, "[w]hen a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," and, "[t]hus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* Such language should not be read, however, to preclude the Court from entering a partial stay of the conversion and civil conspiracy claims[2], while proceeding with Kalhorn's claims. *See Giles v. ICG, Inc.*, 789 F.Supp.2d 706, 714 (S.D.W. Va. 2011) (finding "unpersuasive the plaintiffs' argument that a stay is categorically impermissible where a plaintiff has asserted both state and federal causes of action" and concluding that the "grant of a partial stay will efficiently sever the issues to be determined by

---

[2] Pham's abuse of process claim is dismissed. *See infra.*

<mark>12</mark>

this Court and the Court of Chancery so that no court renders duplicative holdings"); *In re Countrywide Financial Corp. Derivative Litigation*, 542 F.Supp.2d 1160, 1171 (C.D. Cal. 2008) (rejecting the argument that pursuant to *Colorado River* a "stay on any single claim is impermissible where the state court case cannot 'end the litigation' " because it found "support only in excerpting from cases out of context" and granting a partial stay of "claims that are proceeding in nearly identical form in Delaware, under the same laws"); *see also Big O Tires, LLC v. Felix Bros, Inc.*, No. 10–CV–00362–PAB–KLM, 2011 WL 6181448, at *4 (D. Colo. Dec. 13, 2011); *Krieger v. Atheros Communications, Inc.*, 776 F. Supp. 2d 1053, 1063 (N.D. Cal. 2011). Proceeding here on claims that are not presently before the state court strikes an appropriate balance between the obligation to exercise jurisdiction and the inefficiency, inconvenience, and potential for piecemeal litigation presented by the adjudication of identical claims.

Accordingly, the court will bifurcate Kalhorn's claims from Pham's conversion and civil conspiracy counterclaims and stay proceedings as to those counterclaims. *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."); *see also Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir.1999) (stating that district courts have " 'broad discretion in deciding whether to sever issues for trial' ") (citation omitted).

### B. Abuse of Process Claim

To assert a claim for abuse of process, a plaintiff must allege "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Hertz v. Luzenac Group*, 576 F.3d 1103, 1117 (10th Cir. 2009) (quoting *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998)). Thus, to succeed on an abuse of process claim, a party must show not only improper motive, but also that the legal proceeding was used in an improper manner. *Id.* "[A]lthough the litigant's motive may be important in determining whether there was an 'ulterior purpose' for the use of the process, it still must be established that, viewed objectively, there was an improper *use* of the process." *Id.* (emphasis original). "If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994) (quoting *Inst. for Prof'l Dev. v. Regis Coll.*, 536 F. Supp. 632, 635 (D. Colo. 1982).

In his counterclaim for Abuse of Process, Pham alleges that Kalhorn filed his case "with the intention of using this case to coerce a settlement in" the Nevada state court case. (Doc. No. 20, ¶ 29; *see also* ¶ 30 ["Kalhorn is using the suit to coerce Mr. Pham into agreeing to settle [the Nevada state court case."].) Kalhorn argues that he has not attempted to initiate settlement discussions, made any settlement offer, or acted in any way to use this case to coerce a settlement in the Nevada case. (Reply at 6.) Regardless, at least one court in this District and

other courts addressing similar abuse of process claims have found that attempting settlement does not support a claim for abuse of process regardless of the parties' motivations. *See*, *e.g.*, *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1027 (D. Colo. 2014); *Malibu Media, LLC v. Doe 1*, No. PJM 12–1195, 2013 WL 5603275, at *3 (D. Md. Oct. 10, 2013); *Malibu Media, LLC v. Lee*, No. 12–03900, 2013 WL 2252650, at *5–6 (D.N.J. May 22, 2013). *See also Metro Media Entm't, LLC v. Steinruck*, 912 F. Supp. 2d 344, 352 (D. Md.2012) ("While it is likely true, given the salacious nature of the film, that Plaintiff had substantial leverage in settlement discussions, there is nothing wrong with presenting a defendant with a settlement offer prior to proceeding with litigation, and the fact that Plaintiff may have had an ulterior motive is inconsequential in the abuse of process analysis.")

Accordingly, Pham's abuse of process claim, based on Kalhorn's allegedly filing his case to coerce a settlement in the Nevada case, is dismissed with prejudice.

**WHEREFORE**, it is

**ORDERED** that "Plaintiff's Motion to Dismiss Defendant's Counterclaims" (Doc. No. 25) is **GRANTED in part** as follows:

1. Defendant/Counterclaim Plaintiff Andy Pham's abuse of process claim is dismissed with prejudice for failure to state a claim;

2. Defendant/Counterclaim Plaintiff Andy Pham's conversion and civil conspiracy claims are **STAYED**, pursuant to *Colorado River Conservation District v. United States*, 424 U.S. 800, 817 (1976).

Dated this 22nd day of July, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge