IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–01685–KMT

JAMES PAUL KALHORN,

      Plaintiff,

v.

ANDY PHAM,

      Defendant.

---

# ORDER

---

This matter is before the court on "Plaintiff's Motion for Leave to Amend Scheduling Order and File Second Amended Complaint" (Doc. No. 62 [Mot.], filed December 16, 2019). Defendant filed a response (Doc. No. 65 [Resp.], filed January 6, 2020), and Plaintiff filed a reply (Doc. No. 66 [Reply], filed January 20, 2020).

## BACKGROUND

Plaintiff filed his First Amended Complaint on July 19, 2018, asserting jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. No. 16 [Am. Compl.].) Plaintiff states he is a dentist in Colorado Springs, and Defendant is a real estate developer and citizen of Idaho. (*Id.*, ¶¶ 2, 6-7.)

### A. Background Information

Plaintiff states that in December 2015, Plaintiff was approached by an acquaintance who introduced him to Anthony Zogheib and Csaba Meiszburger (the "Middlemen"). (*Id.*, ¶ 8.) The Middlemen were silent owners of Caballos de Oro Estates LLC ("Caballos"), which owned a

five-acre piece of undeveloped property in Clark County, Nevada (the "Property").  (*Id.*, ¶ 9.a-b.)
Plaintiff alleges Defendant was the Middlemen's front-man and was the manager of Caballos.
(*Id.*, ¶ 9.a.)  Plaintiff alleges the Middlemen told him they had various debts that needed to be
paid, that they needed a creditworthy investor to pay off their debts, and they would pay him
back, plus a ten percent fee, within sixty days.  (*Id.*, ¶ 9.c.)  Plaintiff alleges the Middlemen
agreed that if they could not pay after sixty days, Plaintiff would own the land.  (*Id.*)  Plaintiff
agreed to the arrangement, and the Middlemen used the Nevada Secretary of State website to
remove Defendant as the manager of Caballos and replaced his name with Plaintiff's name.  (*Id.*,
¶ 10.)

Plaintiff alleges the Middlemen convinced him that he had become the sole manager and
member of Caballos.  (*Id.*, ¶ 11.)  Plaintiff also obtained an opinion letter from a local attorney,
Rory Vohwinkle, stating that he was the rightful managing member of Caballos.  (*Id.*)  Plaintiff
then obtained two loans for $1.2 million and $550,000, using the Property as security.  (*Id.*, ¶
12.)  Plaintiff personally guaranteed each loan.  (*Id.*)

Plaintiff alleges the Middlemen never repaid Plaintiff, and so he began taking steps to
develop the Property himself.  (*Id.*, ¶ 13.)  In mid-2016, Plaintiff conveyed the Property to
Prometheus and Atlas Real Estate Development, LLC, a new company he had formed to hold the
Property.  (*Id.*, ¶ 14.)  At the end of 2016, Defendant sent a letter to Plaintiff claiming to be the
rightful owner of the Property and the rightful manager of Caballos.  (*Id.*, ¶ 15.)  In March 2017,
Caballos filed an action in Nevada state court to clear title to the Property.  (*See* Reply, Ex. 1.)
Plaintiff alleges Defendant was involved in the Middlemen's scheme to defraud him by
convincing Plaintiff to pay off various debts and personally guarantee separate loans and then

claiming Plaintiff has no interest in Caballos or the Property, leaving him solely responsible for the loans.  (Am. Compl., ¶ 17.)

### B.  Claims in this Case

Plaintiff alleges Defendant is now engaged in a campaign to defame him.  (*Id.*, ¶ 18.) Specifically, Plaintiff alleges Defendant was the source for an inaccurate story reported in the Las Vegas Review-Journal, published Sunday, May 20, 2018, which characterizes Plaintiff as a "fraudster" and portrays Defendant as the victim of fraud committed by Plaintiff.  (*Id.*, ¶ 19.) Plaintiff also alleges on May 28, 2018, in the building where Plaintiff's dental office is located, Defendant handed out copies of the Review-Journal article along with copies of a flyer calling Plaintiff a "Corporate Land Thief" and directing recipients to a website titled StopJamesKalhorn.com.  (*Id.*, 20-21.)  As of June 29, 2018, the front page of the website was topped with a photo of Plaintiff captioned "JAMES KALHORN'S MUGSHOT" and text reading, "WANTED: STEALING BY DECEIT AND CROSSING STATE LINE TO COMMIT GRAND LARCENY."  (*Id.*, ¶ 21.)  As of July 2, 2018, the website had been edited to read, "Dentist in Colorado Springs wanted: STEALING BY DECEIT AND GRAND LARCENY." (*Id.*, ¶ 22.)  The updated webpage is supplemented with a photo of Defendant holding the flyer in front of Plaintiff's dental practice.  (*Id.*, ¶ 23.)  A previous version of the website was headlined: "Accomplices of James Kalhorn" followed by a photo of an FBI "Wanted" poster.  (*Id.*, ¶ 24.) Plaintiff alleges the website, among other things, (1) accuses "the entire City Council of Las Vegas, including the Mayor" of "unwittingly . . . assist[ing]" "a total swindler;" (2) accuses Plaintiff of being a "land thief" and "corporate identity thief" and of committing "corporate

identity fraud;" and (3) asserts that Plaintiff engineered a sophisticated scheme to steal Defendant's property.  (*Id.*, ¶ 26.)

Plaintiff alleges that Yvonne Serna, a woman who works across the street from Plaintiff's office, encountered Defendant handing out these flyers stapled to copies of the newspaper article and told Ms. Serna that Plaintiff stole the property across the street from Defendant by forging documents and filing them with the Nevada Secretary of State and that Plaintiff was a thief and a liar.  (*Id.*, ¶ 27.)  Plaintiff also alleges David Zallar received a copy of the flyer and reviewed the website content and, as a result, Mr. Zallar has decided not to invest $250,000 in Alma Tequila Company ("Alma Tequila"), a company in which Plaintiff is an equity shareholder.  (*Id.*, ¶ 28.) Plaintiff also alleges Matthais Bober was made aware of Defendant's website and viewed the content and, as a result, Mr. Bober has decided not to invest $350,000-400,000 in Alma Tequila. (*Id.*, ¶ 29.)

Plaintiff asserts common law claims for Defamation—Libel Per Se related to the flyer and the website, Defamation—Slander Per Se related to the statements to Plaintiff's business neighbor, and Tortious Interference with Prospective Business Advantage related to his dental patients and potential investors.  (*Id.*, ¶¶ 31-57.)

### C. *Proposed Amendments*

Plaintiff seeks to amend his complaint to add an additional plaintiff and to amend his claim for Tortious Interference with Prospective Business Advantage.  (Mot. at 4.)  Specifically, Plaintiff seeks to add Xamay Importers, LLC, the owner of Alma Tequila, as a plaintiff.  (*Id.*) Plaintiff Kalhorn is an owner of Xamay Importers, LLC.  (*Id.*)  Plaintiff argues that the Tortious Interference with Prospective Business Advantage claim is properly brought by Xamay

Importers, LLC., because Messrs. Zallar and Bober decided not to invest in Alma Tequila after learning about Defendant's allegedly defamatory and libelous publications.  (*Id.*)

## LEGAL STANDARD

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Federal Rule of Civil Procedure 16(b)(4) and (2) satisfaction of the Federal Rule of Civil Procedure Rule 15(a) standard."  *Gorsuch, Ltd., B.C. v. WellsFargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) ("We now hold that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so.").  A plaintiff is entitled to amend a complaint only upon meeting "the two-part test of first showing good cause to amend the scheduling order of Rule 16(b), and then showing that amendment would be allowed under Rule 15(a)."  *Ayon v. Kent Denver Sch.*, No. 12-cv-2546-WJM-CBS, 2014 WL 85287, at *2 (D. Colo. Jan. 9, 2014).  The two-step analysis is explained as follows:

> Rule 16(b)[(4)]'s good cause standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b)[(4)] does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, the Court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."

*Pumpco, Inc. v. Schenker Int'l Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001) (citations omitted).

Pursuant to Federal Rule of Civil Procedure 15(a)(2), the court is to freely allow amendment of the pleadings "when justice so requires."  The grant or denial of an opportunity to amend is within the discretion of the court, but "outright refusal to grant the

leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

However, if a plaintiff fails to show good cause under Rule 16(b)(4), there is no need for the court to move to the second step of the analysis and analyze whether the plaintiff has satisfied the requirements of Rule 15(a). *Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011).

## ANALYSIS

Plaintiff filed his Motion on December 16, 2019, three months after the expiration of the pleading amendment deadline of September 17, 2019, established in the Scheduling Order. (*See* (Doc. No. 44 [Scheduling Order] at 7.) Thus, because Plaintiff filed his Motion after the deadline for amending the pleadings, the court must start its analysis with Rule 16(b)(4).

Plaintiff does not make a compelling argument as to why "good cause" exists for the court to allow his amendments. Plaintiff argues that, despite the Scheduling Order in place since June 5, 2019, and without either party seeking a stay of discovery, at the time the Motion was filed on December 16, 2019, the parties had just begun discovery. (Mot. at 2.) Defendant argues, and the court agrees, that Plaintiff has failed to show that he acted diligently in seeking to add his own company as a party plaintiff at any time before the expiration of the deadline to amend pleadings. (Resp. at 1-2.) In his Motion, Plaintiff argues that there has been some

"uncertainty surrounding the claims that would be pursued in this case."  (Mot. at 4. )  However,

Plaintiff does not explain what that uncertainty is or how it affected his diligence in meeting the

court's deadline to add new parties.  Moreover, Plaintiff fails to explain why he did not move to

extend the deadline until such uncertainty could be resolved.

Plaintiff has not provided an "adequate explanation for the delay" and, accordingly, has

failed to establish good cause for modifying the Scheduling Order.  *See Minter v. Prime Equip.

Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006); *Colo. Visionary Acad. v. Medtronic, Inc.*, 194

F.R.D. 684, 688 (D. Colo. 2000) ("Good cause means that scheduling deadlines cannot be met

despite a party's diligent efforts").

Because Plaintiff has not shown good cause for seeking leave to amend his complaint

after the expiration of the pleading deadline, the Motion is subject to denial on this basis alone.

*See Colo. Visionary Acad.*, 194 F.R.D. at 688 (denying an untimely motion to amend solely on

the basis of a failure to establish "good cause" within the meaning of Rule 16(b)(4)); *Minter*, 451

F.3d 1205 (10th Cir. 2006) (explaining that lateness itself does not justify denial of a motion to

amend, but "undue" lateness may).  Accordingly, the court need not analyze the Motion under

the standard set forth in Fed. R. Civ. P. 15(a).  *See Nicastle*, 2011 WL 1465586, at *3 ("Because

the Court finds no good cause to amend the scheduling order, [it] will not address whether leave

to amend is appropriate under Rule 15."); *see also Schneider v. City of Grand Junction, Colo.*,

No. 10-cv-01719-MSK-KLM, 2011 WL 13224077 (D. Colo. Apr. 25, 2011) (denying motion to

amend solely because the plaintiff failed to show good cause for seeking leave to amend her

complaint under Rule 16), *report and recommendation adopted sub nom. Schneider v. City of*

*Grand Junction Police Dep't*, No. 10-CV-01719-MSK-KLM, 2011 WL 13224165 (D. Colo. July 12, 2011).

Wherefore, for the foregoing reasons, it is

**ORDERED** that "Plaintiff's Motion for Leave to Amend Scheduling Order and File Second Amended Complaint" (Doc. No. 62) is **DENIED**.

Dated this 2nd day of June, 2020.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge